UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

Case No. 2:23-po-30001
Magistrate Judge Kimberly G. Altman

v.

EDWARD KLEIN,

    Defendant.

_____/

**<u>OPINION AND ORDER FINDING DEFENDANT
GUILTY OF SIMPLE ASSAULT UNDER 18 U.S.C. § 113(a)(5)</u>**[1]

    I.    Introduction

Defendant Edward Klein (Klein) is charged with committing a simple assault against Stephanie Spriggs (Spriggs) on a commercial flight departing and arriving within the State of Michigan. Simple assault is prohibited within the special maritime and territorial jurisdiction of the United States under 18 U.S.C. § 113(a)(5).[2]

---

[1] Under 28 U.S.C. § 636(a)(4), a magistrate judge has "the power to enter a sentence for a petty offense."

[2] "Simple assault committed on an aircraft within the special aircraft jurisdiction of the United States is prosecuted under Title 18 of the United States Code pursuant to 49 U.S.C. § 46506." *United States v. Gangasani*, No. 16-mc-80001, 2016 WL 6395454, at *1 (N.D. Ill. Oct. 28, 2016).

1

The Court held a bench trial in this matter on June 28, 2023. Based on the following findings of fact and conclusions of law, the Court FINDS Klein GUILTY of violating 18 U.S.C. § 113(a)(5).

## II.   Findings of Fact

### A.   Background Facts

1. On October 14, 2020, Spriggs and Klein were both on Delta Flight 4714 traveling from Grand Rapids, Michigan to Detroit Metropolitan Airport (Detroit). (Trial Transcript, ECF No. 7, PageID.59). The flight departed Grand Rapids at 6:20 p.m. and landed in Detroit at 6:59 p.m. (*Id.*, PageID.70-71, 114-115). The flight was crewed by flight attendants La-Branda Dunn (Dunn) and Craig Hamilton, Jr. (Hamilton). (*Id.*, PageID.71, 114, 128).

2. Spriggs was traveling for work with a final destination of Richmond, Virginia. (*Id.*, PageID.21). Spriggs sat in her assigned seat of 9A, which was a window seat near the front of the airplane. (*Id.*, PageID.22, 68). She was in a row by herself, and the window was located to the left of her. (*Id.*).

3. Klein was traveling home after attempting to visit his sister before her passing with a final destination of Syracuse, New York. (*Id.*, PageID.70, 141-142). Klein was assigned seat 11C, a seat located across the aisle of the airplane from Spriggs' seat. (*Id.*, PageID.68). However, during the flight, he sat in seat 10A, which was the seat located directly behind Spriggs. (*Id.*, PageID.21, 68). Klein

testified that he changed seats because it "was the height of COVID" and he "was concerned about social distances." (*Id.*, PageID.151-152).

4. Spriggs testified that about midway through the short flight, the first unwanted touch occurred. (*Id.*, PageID.22-23). Klein put his foot in between Spriggs' seat and the window, leaving it to rest on her "thigh and [her] arm area." (*Id.*, PageID.22-23). He was wearing a "gray and blue stripped sock" and no shoe. (*Id.*, PageID.23, 37-38).

5. Klein touching Spriggs with his foot "weirded" her out. (*Id.*, PageID.24). She also found the touching "[u]ncomfortable" and "[a] little gross[.]" (*Id.*).

6. When Klein placed his foot on Spriggs' body, she turned her head back to look behind her at Klein, "just to let him know that [she] knew." (*Id.*). Spriggs did not say anything to Klein, nor did she see his face. (*Id.*, PageID.24, 38). After Spriggs turned to look at Klein, he removed his foot. (*Id.*, PageID.24). Klein left his foot on Spriggs' body for less than a minute. (*Id.*, PageID.23, 37).

7. Spriggs testified that approximately five minutes after the foot incident, she "felt something on [her] left breast from behind." (*Id.*, PageID.24, 26, 38). It felt like someone was kneading her breast "sort of like a kitten does with a blanket." (*Id.*, PageID.24-25).

8. When Spriggs looked down at her left breast, she "saw a hand and fingers." (*Id.*, PageID.24, 26, 28-39). During this touching, Spriggs' left arm was resting on

3

the armrest to her left, and the hand reached from behind in between her left arm and her torso. (*Id.*, PageID.25). The touching was constant and lasted between fifteen and thirty seconds. (*Id.*, 25, 39). No foot was present during this incident and there was no turbulence occurring at the time. (*Id.*, PageID.28).

9. It took Spriggs a few seconds to comprehend that someone was touching her left breast, but once she did, she "lifted up in [her] seat," turned around, and asked "really?" while looking over the seat. (*Id.*, PageID.26). Klein responded with a flippant, "I'm sorry. I'm sorry." (*Id.*, PageID.27-28).

10. Spriggs felt "[v]ery violated" by the touching. (*Id.*, PageID.26). Spriggs did not immediately report the touching because she "was still in shock[,]" and felt like she "was in fright or flight mode." (*Id.*, PageID.29).

11. Spriggs testified that around three to five minutes after the second incident, Spriggs heard the pilot announce that the airplane was making its final descent and that it would be landing soon. (*Id.*, PageID.28). Spriggs then asked the man sitting across the aisle from her if he would switch seats with her because she "felt very uncomfortable and [she] wanted to be removed from that situation." (*Id.*, PageID.28-29).

12. Klein's version of events varies significantly from Spriggs'. He testified that he suffers from back, neck, and feet problems and that he "was wearing a brand new pair of sneakers and [his] right foot was aching." (*Id.*, PageID.147-

4

148).  The sneakers were irritating the bunion on Klein's right foot.  (*Id.*, PageID.148-150).  Klein "also ha[s] flat feet and these shoes did not provide a lot of support." (*Id.*, PageID.148-149).  The sneakers, which were admitted during trial, showed fraying along the edge of the right shoe where Klein's alleged bunion rubbed against the fabric of the shoe.  (*Id.*, PageID.150-151).

13.   Due to his discomfort, Klein removed his shoes soon after the airplane left the departure gate.  (*Id.*, PageID.153).  He explained that he has a "bad habit of taking [his] shoes off and putting [his] feet up." (*Id.*, PageID.153-154).  Klein put his left foot up first and then put his right foot on top of his left foot.  (*Id.*, PageID.154).

14.   Klein further testified that about halfway through the flight, he believed that he put his left foot down and reached forward to "massage [his] right foot." (*Id.*, PageID.154).  He recalled "very briefly" rubbing his foot from "side to side" with his left hand.  (*Id.*, PageID.154-156).  Klein did not realize that anyone was sitting in the seat in front of him until after he began massaging his foot and was alerted to Spriggs' presence by a "sudden movement." (*Id.*, PageID.155-156).

15.   Klein testified that at that point, Spriggs looked over the top of the seat to look at him and say "something." (*Id.*, PageID.156).  Klein removed his foot and apologized, which he explained at trial was an apology for being "obnoxious and rude" when he "invaded her space." (*Id.*, PageID.156-157).  Klein was never

5

aware of touching Spriggs' breast or any other part of her body. (*Id.*, PageID.156).

16.     Spriggs testified that approximately five minutes after she switched seats, the airplane landed. (*Id.*, PageID.29). Spriggs had become angry in the intervening minutes following the second touching. (*Id.*, PageID.30). She stood up, grabbed her carry-on bag, and turned to face Klein, loudly saying, "If you ever touch another woman like that ever again, I will beat your ass." (*Id.*). Klein responded with another flippant, "I'm sorry." (*Id.*). Many people began looking at Spriggs. (*Id.*, PageID.30-31).

17.     Klein testified similarly, recalling that Spriggs came over the seat, pointed at him, and said something to the effect of, "don't you ever do that to another woman" or she would "[k]ick [his] ass." (*Id.*, PageID.157). Spriggs appeared "angry and upset," and it was at this point that Klein realized that she thought he "must have touched her in a way that she thought was sexual." (*Id.*).

18.     Hamilton testified that he was located approximately ten rows behind Spriggs and Klein, and recalled Spriggs standing up, turning to Klein, and sternly saying, "[Y]ou know what you did. You did it on purpose." (*Id.*, PageID.116, 119-120).

19.     Both Spriggs and Dunn testified that as Spriggs was exiting the airplane and proceeding to the jet bridge, she told Dunn that Klein had touched her. (*Id.*, PageID.31, 129-130). Spriggs recalled saying that "the passenger behind [her] had

grabby hands." (*Id.*, PageID.31, 129-130). Dunn noted in her report that Spriggs used the phrase "really grabby hands." (*Id.*, PageID.129-130). Dunn testified that Spriggs was "near tears," "really distressed," and "emphatically upset." (*Id.*, PageID.132).

20. Spriggs testified that while on the jet bridge, flight attendants gathered to ask her about what occurred on the airplane. (*Id.*, PageID.31). Spriggs informed the flight attendants about the two touching incidents and identified Klein as the perpetrator. (*Id.*).

21. A flight attendant and gate agent then escorted Spriggs to the gate and offered her support. (*Id.*, PageID.32). They also informed Spriggs that they would call the authorities. (*Id.*). Thereafter, airport police were contacted, and they in turn contacted FBI Special Agent Nathan Steele (Agent Steele). (*Id.*, PageID.62).

22. Standard operating procedures required two agents to respond to a call, so Agent Steele called Officer James Brown (Officer Brown) who was then with Customs and Border Protection. (*Id.*, PageID.62). Together Agent Steele and Officer Brown went to the gate where Spriggs and Klein were located. (*Id.*, PageID.62, 94). Upon arriving at the gate, Agent Steele spoke to Spriggs and Officer Brown spoke to Klein. (*Id.*, PageID.33, 62-63, 67).

23. Spriggs testified that she provided Agent Steele with a detailed description of everything that occurred between her and Klein on the airplane. (*Id.*,

PageID.33). During the interview, Spriggs experienced a range of emotions including anger and also cried. (*Id.*).

24. Agent Steele testified that during the interview, Spriggs appeared "emotionally distraught" and "traumatized." (*Id.*, PageID.64). She was shaking and "[t]he pitch and tone of her voice was uneven and somewhat sporadic[,]" as she described the two incidents of touching. (*Id.*). In particular, Spriggs described the second "touching as lasting approximately 30 seconds. She indicated that the touching was deliberate, that it was repetitive, and constant." (*Id.*, PageID.66)

25. After speaking to Agent Steele, Spriggs walked away to call a friend. (*Id.*). Following the short call, a woman offered Spriggs support and a hug. (*Id.*). Spriggs then returned to the gate and wrote out a statement for Agent Steele. (*Id.*, 33, 50-51, 67).

26. Officer Brown testified that before speaking to Klein, he directed the airport police officers at the gate to ask Klein to provide a written statement. (*Id.*, PageID.94-95). Klein's first statement was illegible, so Officer Brown asked him to rewrite it. (*Id.*, PageID.95).

27. During their original interactions, Klein told Officer Brown that he was a lawyer, and later during his interview, that he may have accidently touched Spriggs while he was massaging his foot. (*Id.*, PageID.95, 102). Officer Brown did not believe Klein expressed proper emotion during his interview and in his statement,

which led him to conclude that Klein did not feel apologetic for his actions. (*Id.*, PageID.102, 110).

28. After Spriggs completed the written statement, Delta employees escorted her to the gate for her next flight. (*Id.*, PageID.33-34). Delta employees ensured that nobody was seated in the rows immediately in front and behind of Spriggs during her flighting to Richmond, Virginia. (*Id.*, PageID.34).

29. After interviewing Klein and Spriggs, Agent Steele and Officer Brown conferred to discuss what they had learned and decide the "appropriate next steps." (*Id.*, PageID.71-72, 103-104). Ultimately, they determined that there was probable cause for simple assault and Agent Steele issued a criminal citation to Klein. (*Id.*, PageID.69, 71-72).

30. While Agent Steele was issuing the citation, Klein appeared "somewhat frustrated" and informed Agent Steele that he was a defense attorney. (*Id.*, PageID.69). Once Agent Steele issued the citation, Klein appeared "indifferent." (*Id.*, PageID.72).

31. Klein's wife of forty-seven years, Linda Trapkin (Trapkin), testified as a defense witness. (*Id.*, PageID.162). She stated that she had flown with Klein "probably about 50 times." (*Id.*). Trapkin testified that Klein "has a habit of immediately taking off his shoe[s], glasses and if thinks no one is in front of him, he puts his feet up. He [sits] slouched in the seat and puts his feet up on the

9

armrest in front of him." (*Id.*, PageID.164-165). Trapkin has asked Klein to stop doing this, but he has not listened. (*Id.*, PageID.165). She also testified that Klein does not own any blue and gray striped socks because he only wears socks with polka dots. (*Id.*, PageID.166).

## B. Credibility Issues

32. The Court finds the testimony of Spriggs to be credible. From moments after her interactions with Klein through the over two year wait for trial and finally at trial, she has consistently maintained that two touching incidents occurred, and that during the second, Klein touched her breast in a nonconsensual and unwanted manner. At trial, Spriggs described this touching as Klein kneading her left breast. The Court is not swayed by Klein's attempts at trial and in his trial brief to suggest that Spriggs' version of events changed because she included more details at certain points than others and because her recollection of exactly how long the two touching incidents occurred has varied slightly. These minor discrepancies are not unreasonable and do not undermine her credibility given that she was recalling an event multiple times over a period of years, particularly when asked different questions by different questioners.

33. The Court finds the testimony of Hamilton and Dunn to be credible. Both testified that Spriggs appeared upset after the flight. Hamilton recalled Spriggs confronting Klein during the deboarding process, while Dunn recalled Spriggs

disclosing that there was a passenger with "very grabby hands" sitting behind her during the flight. Hamilton and Dunn testified consistently with Spriggs and their testimony that she was upset and angry with Klein supports Spriggs' testimony that Klein touched her left breast in an inappropriate manner.

34.  The Court finds the testimony of Officer Brown and Agent Steele to be credible. Both recalled Spriggs being upset and acting consistently with what they would expect from the victim of unwanted sexual contact and Klein's demeanor to be unapologetic, even though he had said he was sorry.

35.  The Court does not find the testimony of Klein to be credible as to the disputed facts. It is not believable that Klein would not feel his feet or hand touching Spriggs. It is also not believable that Spriggs would have appeared visibly angry and upset to Hamilton, Dunn, Officer Brown, and Agent Steele if Klein's touching of her breast had been so inadvertent that he did not realize it had occurred. Further, in Klein's version of events, his feet were resting on Spriggs' left armrest for almost the entire flight, yet Spriggs said nothing to him during this period.

36.  The Court does not find the testimony of Trapkin to be either credible or particularly relevant to the disputed facts. Trapkin was not on the flight at issue. She thus could not testify to the events in dispute. Additionally, she testified that Klein only put his feet up on the armrest in front of him if he believed nobody to

be sitting in that row, yet Klein testified that he did not check to see if anyone was seated in front of him. In fact, he testified that he moved to a new row so he could sit in a row by himself, suggesting that while there may have been relatively few passengers on the plane, they were spread out amongst all the rows in order to promote social distancing. Trapkin's testimony regarding Klein's sock preference is irrelevant. Klein testified that he bought new shoes for the flight; he easily could have purchased new socks as well. Or, Spriggs could have meant that Klein's socks had a blue and gray pattern rather than blue and gray stripes. Regardless, the fact that Klein put at least one of his feet on Spriggs' left arm rest is not in dispute. Klein admitted to this behavior.

37. In sum, the Court credits Spriggs' testimony that Klein reached forward and deliberately touched her breast in a kneading motion and stopped only once she turned to confront him.

### III. Conclusions of Law

38. Klein is charged in the instant citation with violating 18 U.S.C. § 113(a)(5).

39. "A defendant violates § 113(a)(5) by deliberately touching another individual in a patently offensive manner without justification or excuse." *United States v. Hedberg*, 98 F. App'x 498, 499 (6th Cir. 2004) (citing *United States v. Whitefeather*, 275 F.3d 741, 743 (8th Cir. 2002); *United States v. Bayes*, 210 F.3d 64, 69 (1st Cir. 2000)). "Defendant's intent to injure the victim or threaten the

victim with harm is not relevant." *Ivy v. United States*, No. 5:08–CR–00021–TBR, 2010 WL 1257729, at *4 (W.D. Ky. Mar. 26, 2010) (citing *Bayes*, 210 F.3d at 69).

40.     "Because personal indignity is the essence of a battery, the common law holds an individual liable not only for contacts which do actual physical harm, but also for those which are offensive and insulting. Contact is offensive when it would offend the ordinary person—that is, when such contact is unwarranted by the social usages prevalent at that time and place at which it is inflicted." *United States v. Alvarez-Murillo*, ___ F. Supp. 3d ___, ___, No. EP:23-CR-01095-ATB, 2024 WL 1146139, at *2 (W.D. Tex. Mar. 14, 2024) (cleaned up).

41.     "Even a seemingly slight, but intentional, offensive touching can suffice for a battery." *United States v. Lewellyn*, 481 F.3d 695, 698 (9th Cir. 2007). Indeed, in *Bayes*, "the First Circuit affirmed a defendant's conviction under § 113(a)(5)" because the defendant committed an "intentional and patently offensive" touching by "intentionally touching a flight attendant on the buttocks." *Id.* Similarly, the Seventh Circuit has explained that a "common example" of offensive touching is " '[g]roping' a woman or child," in other words, engaging in "sexually offensive but not violent physical contact." *United States v. Watts*, 798 F.3d 650, 652 (7th Cir. 2015).

42.     It is undisputed and therefore established beyond a reasonable doubt that the offense occurred on a commercial flight that both departed and arrived in the State

of Michigan. Accordingly, the offense occurred within the "the special aircraft jurisdiction of the United States." *United States v. Gangasani*, No. 16-mc-80001, 2016 WL 6395454, at *1 (N.D. Ill. Oct. 28, 2016).

43. The government has demonstrated beyond a reasonable doubt that Klein deliberately touched Spriggs' left breast.

44. The government has also demonstrated beyond a reasonable doubt that deliberately touching an unknown woman's breast during a flight was patently offensive and insulting under the prevailing norms of the day. *See Alvarez-Murillo*, ___ F. Supp. 3d at ___, 2024 WL 1146139, at *2; *see also Watts*, 798 F.3d at 652; *Lewellyn*, 481 F.3d at 698.

45. Klein has not established that the touching was justified or excused because the Court does not credit his testimony that he was massaging his right foot and did not intend to touch Spriggs' breast.

46. The government has therefore satisfied each element of the offense charged beyond a reasonable doubt.

47. Klein is found guilty of the offense charged.

### IV. Conclusion

For the reasons stated above, Klein is FOUND GUILTY of committing a simple assault against Spriggs in violation of 18 U.S.C. § 113(a)(5). The Court also directs the preparation of a presentence report and will schedule a date for

sentencing.

SO ORDERED.

Dated: August 22, 2024             s/Kimberly G. Altman  
Detroit, Michigan                KIMBERLY G. ALTMAN  
                                           United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 22, 2024.

                                            s/Julie Owens  
                                            Julie Owens  
                                            Case Manager