UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

Case No. 2:23-po-30001
Honorable Linda V. Parker

EDWARD KLEIN,

Defendant-Appellant.
______________________________/

**OPINION AND ORDER AFFIRMING MAGISTRATE JUDGE'S JUDGMENT FINDING DEFENDANT KLEIN GUILTY OF SIMPLE ASSAULT**

Defendant-Appellant Edward Klein (Klein) has filed an appeal pursuant to Federal Rule of Criminal Procedure 58(g)(2)(B) challenging his misdemeanor conviction for simple assault in violation of 18 U.S.C. § 113(a)(5).

## I. Factual and Procedural Background

On October 14, 2020, Klein traveled on Delta Airlines Flight 4714 from Grand Rapids, Michigan, to the Detroit Metropolitan Airport. At some point during the flight, Klein moved to seat 10A, which was located directly behind another passenger, Stephanie Spriggs (Spriggs), in seat 9A.

Spriggs alleges that, after Klein moved behind her, he put his foot between her seat and the window, which left his foot resting on her thigh and arm. Though Spriggs felt uncomfortable by Klein's behavior, she did not say anything to him at

the time. Instead, she turned and looked at Klein, intending to "let him know that [she] knew" what he was doing. (ECF No. 7 at PageID.24.) Klein took his foot down after this interaction. In total, Klein's foot touched Spriggs' body for less than a minute. Klein claims he did not know that anyone was sitting in the seat in front of him when he put his foot up.

Approximately five minutes later, Spriggs felt something kneading her left breast. When she looked down, she saw a hand and fingers reaching from behind and between her left arm and her torso. Despite some uncertainty as to the duration of the touching, Spriggs alleges that it continued for around fifteen to thirty seconds. After realizing what was happening, Spriggs turned around to face Klein and asked, "really?" to which he responded, "I'm sorry. I'm sorry." Klein denies knowing that he touched Spriggs' breast or any other part of her body.

While exiting the plane onto the jet bridge, Spriggs told flight attendant La-Branda Dunn (Dunn) that Klein had touched her and said something to the effect of Klein having "grabby hands." Dunn recalled that Spriggs was distressed, upset, and near tears. Spriggs then reported both touching incidents to Dunn and another flight attendant, Craig Hamilton, Jr. (Hamilton). During these conversations, Spriggs identified Klein as the person who touched her.

A flight attendant called for law enforcement assistance and Federal Bureau of Investigations Special Agent Nathan Steele (Steele) and Customs and Border

Patrol Officer James Brown (Brown) responded. After arriving at the gate, Steele spoke with Spriggs, and Brown spoke with Klein. Brown directed airport police officers to obtain a written statement from Klein. After reviewing Klein's initial written statement, Brown asked Klein to write a second statement because the first was illegible.

Following the officers' respective conversations with Spriggs and Klein, Steele issued Klein a criminal citation for simple assault. A bench trial before Magistrate Judge Kimberly G. Altman was held on June 28, 2023. Magistrate Judge Altman thereafter issued a decision, finding Klein guilty as charged. (ECF No. 10). On February 27, 2025, Magistrate Judge Altman sentenced Klein to a two-year term of probation and entered a Judgment. (ECF No. 24.)

Klein filed a brief in support of his appeal on May 27, 2025, asking this Court to reverse his conviction. He raises five grounds for reversal: (a) whether the Magistrate Judge erred in permitting Steele to offer expert testimony based on his training and experience; (b) whether the Magistrate Judge erred in permitting Steele and Brown to offer lay opinion testimony; (c) whether lay opinion testimony about Klein's handwriting, lack of empathy, apology, and indifference constituted improper character evidence; (d) whether the trial court erred in admitting irrelevant hearsay testimony; and (e) whether the admission of opinion testimony was prejudicial. (*See* ECF No. 37 at PageID.482.)

Plaintiff-Appellee the United States of America ("the Government") filed a response brief on July 1, 2025. (ECF No. 39.) Klein filed a reply brief on July 15, 2025. (ECF No. 40.) Finding the facts and legal arguments sufficiently presented in the parties' briefs, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Criminal Rule 12.1.

## II. Standards of Review

"An appellate court reviews all evidentiary rulings . . . under the abuse-of-discretion standard." *United States v. Davis*, 577 F.3d 660, 666 (6th Cir. 2009) (collecting cases). "An abuse of discretion will be found upon a 'definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *Id.* (quoting *United States v. Schreane*, 331 F.3d 548, 564 (6th Cir. 2003)).

The abuse of discretion standard applies to preserved objections from trial. *United States v. White*, 492 F.3d 380, 398 (6th Cir. 2007) (citing *JGR, Inc. v. Thomasville Furniture Indus., Inc.*, 370 F.3d 519, 524 (6th Cir. 2004)). Pursuant to Federal Rule of Evidence 103(a)(1), a party preserves an objection to admitted evidence only where the party timely objects and states the specific ground(s) for the objection. "Once the court rules definitively on the record . . . a party need not renew an objection . . . to preserve a claim of error for appeal." Fed. R. Evid. 103(b). Klein preserved his objections regarding the five issues he raises on

appeal. As such, the abuse of discretion standard applies to each analysis unless otherwise stated.

A trial court's credibility determinations are reviewed for clear error. *See United States v. May*, 399 F.3d 817, 827 (6th Cir. 2005). To recognize a clear error, the reviewing court must be "left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985).

Even if it finds an error, a reviewing court "will reverse a . . . decision to admit or exclude evidence only if [it] finds that the . . . [trial] court has abused its discretion, and only if [it is] 'firmly convinced of a mistake that affects substantial rights and amounts to more than harmless error.'" *United States v. Baldwin*, 418 F.3d 575, 579 (6th Cir. 2005) (quoting *Pressman v. Franklin Nat'l Bank*, 384 F.3d 182, 187 (6th Cir. 2004)).

## III. Evidentiary Issues on Appeal

### a. No Reversible Error Occurred in Admitting Steele's Testimony to Witness Memory

Klein argues that Steele should not have been allowed to testify regarding the clarity of a witness's memory over time for two reasons: (1) Steele was not admitted as an expert witness under Federal Rule of Evidence 702, and (2) he has no training or qualifications in the function of memory. (*See* ECF No. 37 at PageID.492-93.) In response, the Government argues that Steele's testimony was

admissible lay opinion testimony pursuant to Federal Rule of Evidence 701 because it was based upon his perceptions and observations of the investigation "as well as [his role as] a law enforcement officer with 15 years of experience." (ECF No. 39 at PageID.536-537.) A witness admitted under 701 need not be qualified as an expert. *Compare* Fed. R. Evid. 701 (requirements for lay opinion testimony), *with* Fed. R. Evid. 702 (requirements for expert witness testimony). To testify as an expert under Rule 702, the witness must be "qualified . . . by knowledge, skill, experience, training, or education" to testify on the particular topic in issue. Fed. R. Evid. 702.

Federal Rule of Evidence 701(a) permits lay witnesses to testify to opinions that are "rationally based on the witness's perception." Such testimony is proper so long as it is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). This requirement has a clear evidentiary purpose:

> "Rule 701(c)[] is designed to 'prevent a party from conflating expert and lay opinion testimony thereby conferring an aura of expertise on a witness without satisfying the reliability standard for expert testimony set forth in Rule 702 . . ..''

*United States v. Kilpatrick*, 798 F.3d 365, 384 (6th Cir. 2015) (citing *United States v. Garcia*, 413 F.3d 201, 215) (6th Cir. 2005)). The Sixth Circuit has held that, "when an agent gives opinions that rely on the agent's specialized training as a law

enforcement officer, that testimony is expert testimony, and the agent must be qualified under Rule 702." *Id.* (citing *Garcia*, 413 F.3d at 215-17).

The Court tends to conclude that Steele's testimony falls outside the scope of Federal Rule of Evidence 701. To be sure, "law-enforcement officers may testify as lay witnesses about their interpretations of conversations when they either participated in the conversation, observed it, or have 'personal knowledge of the facts being related.'" *United States v. Hamaed*, 178 F.4th 281, 300 (6th Cir. 2026) (quoting *United States v. Reed*, 163 F.4th 338, 356 (6th Cir. 2025)). In *Hamaed*, the officer testified about his interpretation of text messages that the defendants sent to him based on his participation in the conversation. *Id.* The officer's testimony was specific to the defendants in that case. *Id.* Here, however, Steele testified about witness memory generally based on his "training and experience as a law enforcement officer." (ECF No. 7 at PageID.89-90.) Steele did not testify to Spriggs' memory from his conversations with her, but rather the memory of witnesses generally. (*Id.*) Steele's testimony on witness memory, therefore, exceeded the scope of Federal Rule of Evidence 701.

Nevertheless, even if this testimony was improperly admitted, the error was harmless. Witness memory was discussed at trial because Klein identified a discrepancy in Spriggs' statements as to the duration of the touching of her breast. (ECF No. 7 at PageID.84.) Despite Klein's concern with Spriggs' contradictory

statements as to the duration of the alleged touching, Spriggs consistently reported a touching that occurred for at least *some* duration. (*Id.*) It is immaterial whether the touching lasted for five seconds or thirty. Duration is not an element of simple assault. *See* 18 U.S.C. § 113(a)(5); *see also United States v. Whitefeather*, 275 F.3d 741, 742-43 (8th Cir. 2002) (affirming a jury instruction that simple assault is an intentional or knowingly harmful contact, *however slight*, without justification or excuse); *United States v. Bayes*, 210 F.3d 64 (1st Cir. 2000) (affirming defendant's simple assault conviction based on a brief touching). For this reason, whether Steele's testimony on witness memory was admissible is irrelevant to establishing that Spriggs told Steele that Klein touched her breast.

### b. The Trial Court Did Not Abuse Its Discretion in Allowing Steele and Brown to Give Lay Opinion Testimony on Klein's Demeanor, Apology, and Written Statement

#### i. The Admission of Steele's Testimony on Klein's Demeanor was Proper

Klein takes issue with the admission of Steele's testimony regarding Klein's demeanor at the gate, arguing that this was improper lay opinion testimony. In his testimony, Steele described Klein's demeanor during their interactions as "unapologetic and disinterested in what was going on." (ECF No. 7 at PageID.72.) Steele further testified that, "in experiences that [he has] had, people are profuse in their apologies and it is apparent quickly that they are genuinely sincere." (*Id.*)

As discussed, Federal Rule of Evidence 701(a) permits a witness to give an opinion that is "rationally based on the witness's perception." *Hamaed*, 178 F.4th at 300 (internal quotation marks omitted). Even if the interaction between Steele and Klein was brief, Steele's testimony was permissible "because it draws upon [his] 'experiential observations.'" *Id.* (citing *United States v. Freeman*, 730 F.3d 590, 595 (6th Cir. 2013)). Steele interacted directly with Klein and testified about his observations from that interaction. For this reason, the trial court did not abuse its discretion in admitting Steele's testimony under Rule 701(a).

**ii. The Admission of Brown's Testimony as to Klein's Apology and Written Statement was Proper**

Klein also asserts that Brown's testimony regarding his perception of the sincerity of Klein's apology and the legibility of Klein's written statement was improper lay opinion testimony.

Klein argues that Brown's testimony regarding Klein's apology was improper because he did not directly witness it. However, Brown personally observed Klein's recitation of his version of the events during his interview with Klein, which included Klein informing Brown of his apology to Spriggs. Although Brown was not on the flight to observe Klein's apology to Spriggs, Klein described his apology when being interviewed by Brown.[1]

[1] Under Federal Rule of Evidence 701(a), if Brown had testified to the sincerity of Klein's apology to Spriggs during the flight, that testimony would be improper

Brown did not exceed the bounds of Rule 701 when discussing how most people behave when they accidentally touch someone on an aircraft because this is within the scope of one's everyday experience. *See United States v. White*, 492 F.3d 380, 401 (6th Cir. 2007) (quoting *State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992)) ("A lay witness may properly offer testimony which 'results from a process of reasoning familiar in everyday life.'").

Thus, for the same reasons that Steele's testimony regarding his perception of Klein's demeanor was permissible under 701(a), Brown's testimony about his interpretation of Klein's demeanor and apology was proper. *See Hamaed*, 178 F.4th at 300; *Id.* (citing *Freeman*, 730 F.3d at 595). The trial court did not abuse its discretion in admitting this testimony.

Concerning the written statement, Klein argues that Brown had no personal involvement in the creation of the statement or interaction with Klein to provide a foundation for his testimony. Brown asked airport officers to obtain a written statement from Klein. Brown read it, and then directed Klein to write a second statement because the first was illegible. (*Id.* at PageID.95.) Brown testified at trial that when he receives illegible statements, "[he] feel[s] like somebody is not

---

because Brown did not observe the apology when it was made. However, a review of the trial transcript reflects that Brown was testifying regarding his impression of the apology based on how Klein described it to Brown. (*See* ECF No. 7 at PageID.102.)

telling [him] the truth. They're trying to hide something. They're not being compliant with [him]." (ECF No. 7 at PageID.99.)

His testimony regarding the legibility of Klein's written statement and what an illegible statement suggests were "'rationally based on [his] perception' and drew upon his 'experiential observations.'" *Hamaed*, 178 F.4th at 300; *Id.* (citing *Freeman*, 730 F.3d at 595). For this reason, this was proper 701(a) testimony. The trial court did not abuse its discretion in admitting Brown's testimony concerning Klein's demeanor and written statement.

Even if Magistrate Judge Altman erred in admitting this testimony, the error was harmless. As discussed below, Magistrate Judge Altman had the opportunity to observe the testimony of Klein, Spriggs, and all other witnesses and reach her own conclusion as to the credibility and truthfulness of each witness's testimony. She was not bound by Brown's assessment of Klein's credibility, whether based on Klein's written statements or otherwise.

#### c. The Officers' Testimony About Klein's Handwriting and Demeanor Was Not Character Evidence

Klein argues that the previously discussed testimony from Steele and Brown about his handwriting, apparent lack of empathy, indifference, and insincerity in his apology was improper character evidence. Federal Rule of Evidence 404(a)(1) states that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the

character or trait." The Sixth Circuit has held that "testimony that describe[s] any ordinary person's every day observations from a first-hand account" falls outside the scope of Federal Rule of Evidence 404. *See United States v. Gyamfi*, 805 F.3d 668, 674-75 (6th Cir. 2015) (rejecting an argument that "nervousness" qualifies as a character trait). An officer's observations that an individual is "fidgety," "trembling," "tripping over his own words," and so on are also not character traits. *Id.* at 673.

Here, the officers' testimony was analogously limited to their observations of Klein's emotional state during their interactions with him and with his written statement. Klein's argument further fails because Steele and Brown did not offer their testimony of Klein's demeanor and written statement "to prove that [he] acted 'in accordance with [his] character,' but to describe his appearance on [October 14, 2020]." *Id.* at 674-75 (second alteration in original). For these reasons, this testimony was not character evidence, and the trial court did not abuse its discretion in admitting it.

**d. The Trial Court Did Not Admit Improper Hearsay Testimony**

**i. Spriggs' Statements to Dunn Were Admissible under the Excited Utterance Exception to the Hearsay Rule**

Klein argues that Dunn's testimony concerning Spriggs' statements to her was improperly admitted because they constituted hearsay under Federal Rule of Evidence 801. Klein further asserts that Spriggs' statements do not qualify under

the excited utterance exception in Federal Rule of Evidence 803(2). There are three requirements to qualify as an excited utterance:

> "First, there must be an event startling enough to cause nervous excitement. Second, the statement must be made before there is time to contrive or misrepresent. And, third, the statement must be made while the person is under the stress of the excitement caused by the event."

*Davis*, 577 F.3d at 669 (quoting *Haggins v. Warden, Fort Pillow State Farm*, 715 F.2d 1050, 1057 (6th Cir. 1983)).

"The lapse of time between the startling event and the out-of-court statement although relevant is not dispositive." *Haggins*, 715 F.2d at 1057. Instead, "the ultimate question is whether the statement was the result of reflective thought or whether it was a spontaneous reaction to the exciting event." *Id.* at 1058 (quoting Charles T. McCormick et al., *McCormick on Evidence* 705-06 (Edward W. Cleary et al. eds., 2nd ed. 1972)). Even where a party has enough time to reflect, a statement may still be admissible in some instances:

> [W]here the time interval between the event and the statement is long enough to permit reflective thought, the statement will be excluded in the absence of some proof that the declarant did not in fact engage in reflective thought process. Testimony that the declarant still appeared 'nervous' or 'distraught' and that there was a reasonable basis for continuing emotional upset will often suffice.

*Id.* (quoting Charles T. McCormick et al., *McCormick on Evidence* 705-06 (Edward W. Cleary et al. eds., 2nd ed. 1972)).

Klein cites the time between the touching and Spriggs' statements to Dunn to establish that Spriggs had enough time to reflect on what she experienced. Klein also points to the fact that Spriggs testified that she "pulled [herself] together enough where [she] was angry" before exiting the plane. (ECF No. 7 at PageID.30.)

However, Spriggs testified that she was "very overwhelmed" as she exited the airplane and proceeded to the gate. (*Id.* at PageID.32.) In describing her conversation with Spriggs, Dunn described Spriggs' demeanor as "really distressed" and that she was "near tears like her eyes had started to wall up with tears . . . [s]he was very emphatically upset." (*Id.* at PageID.132.) Spriggs experienced a startling event causing nervous excitement, she did not have time to contrive or misrepresent, and she remained under the stress of excitement while speaking with Dunn. Considering these three elements, the Court concludes that Spriggs' statements to Dunn were excited utterances. *See Haggins*, 715 F.2d at 1057. For this reason, the trial court did not abuse its discretion in allowing Dunn to testify to Spriggs' statements to her on the jet bridge because these statements constitute excited utterances and are not inadmissible hearsay.

#### ii. Spriggs' Statements to Steele Were Admissible as Excited Utterance Exceptions to Hearsay

Spriggs spoke with Steele roughly one hour after the touching occurred. She first wrote a written statement and then engaged in an interview with Steele. (ECF

No. 7 at PageID.33-34.) Though there is no testimony as to Spriggs' demeanor when she prepared her written statement, Steele testified that when he approached Spriggs, "[s]he appeared traumatized. She was shaking. The pitch and tone of her voice was uneven and somewhat sporadic." (*Id.* at PageID.64.) For the same reasons that Spriggs' statements to Dunn were admissible as excited utterance exceptions to the hearsay rule, the trial court did not abuse its discretion in allowing Steele to testify as to what Spriggs told him.

Even if the trial court erred in admitting Spriggs' statements to Steele and Dunn, this error was harmless. Spriggs testified regarding both touchings during the flight and her reactions to them. (*See* ECF No. 7 at PageID.22-26, 29-35.) As such, Spriggs' statements to Steele and Dunn were cumulative.

#### iii. Dunn's Statements to Hamilton Were Admissible as Effect on Listener Exceptions to the Hearsay Rule

Klein argues that Hamilton's testimony to what Dunn told him was an inadmissible hearsay statement not subject to the effect on listener exception. "A statement that is not offered to prove the truth of the matter asserted but to show its effect on the listener is not hearsay." *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 379 (6th Cir. 2009) (citing *United States v. Horton*, 847 F.2d 313, 324 (6th Cir. 1988)). Such statements may also be admitted, "to show why the listener acted as [they] did." *United States v. Churn*, 800 F.3d 768, 776 (6th Cir. 2015) (citing *United States v. Pugh*, 273 F. App'x 449, 456 (6th Cir. 2008)).

Hamilton testified that he interacted with Spriggs and wanted to make sure that she was okay after she exited the airplane. (ECF No. 7 at PageID.122-24.) Hamilton also testified that he gave Spriggs a hug. (*Id.* at PageID.124.) Hamilton's testimony regarding what Dunn told him concerning the assault was not offered to establish the truth of the matter asserted (that Spriggs had been assaulted) but rather to contextualize why Hamilton took the steps he took. This testimony was not hearsay. *Churn*, 800 F.3d at 776 (citation omitted). Instead, it was proper effect on listener testimony. *Id.* The Court concludes that the trial court did not abuse its discretion in admitting Hamilton's testimony regarding statements Dunn made to him about Spriggs.

Even if Hamilton's testimony was improperly admitted, this error would be harmless. Hamilton's testimony was cumulative of Dunn's. As discussed above, Dunn's testimony regarding what Spriggs told her was proper because it qualified as an excited utterance. In other words, even if Hamilton's testimony was improper, the content of this testimony was properly admitted during Dunn's examination. As such, any error resulting from the admission of Hamilton's testimony would be harmless.

**e. The Admission of Lay Opinion Testimony Was Not Prejudicial**

Relying on his arguments that parts of the testimonies of Hamilton, Dunn, Brown, and Steele were improperly admitted, Klein argues that such testimony was

prejudicial. He asserts that the trial court erroneously concluded that these witnesses were credible but found that Klein and his wife were not. Specifically, Klein alleges that "the hearsay statements functionally acted to bootstrap, or vouch for the validity of the complainant's version of events." (ECF No. 37 at PageID.509.)

However, these statements were not hearsay and, as this Court has concluded regarding each of the other four issues Klein raises on appeal, the trial court did not commit reversible error in admitting them. *See supra* Parts a-d. In his briefs, Klein provides no other grounds to challenge the credibility of Hamilton, Dunn, Brown, or Steele.

"Evidence is not unduly prejudicial 'simply because it provides powerful evidence that the defendant committed the charged crimes.'" *United States v. Carpenter*, 157 F.4th 841, 849 (6th Cir. 2025) (quoting *United States v. Harvel*, 115 F.4th 714, 737 (6th Cir. 2024)). "Evidence *is* unduly prejudicial when it 'might lead the [factfinder] to convict for an inappropriate reason.'" *Id.* (citing *Harvel*, 115 F.4th at 737).

The Government correctly identifies that credibility determinations are evaluated for clear error. *May*, 399 F.3d at 827. Magistrate Judge Altman listened to the witnesses testify and observed them on the stand. She was able to reach her own conclusion regarding the credibility of each witness. As it relates to Klein's

concerns with Brown's testimony to his perception of illegible statements, it is not apparent that Magistrate Judge Altman based her assessment of Klein's credibility on Brown's testimony that illegible written statements suggest the author was uncompliant or untruthful. For these reasons and those discussed throughout the prior sections, this Court is not "left with the definite and firm conviction that a mistake has been committed" regarding Magistrate Judge Altman's credibility determinations. *Anderson*, 470 U.S. at 573 (1985) (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 394-395) (1948)).

**f. The Trial Court Did Not Commit Reversible, Cumulative Error**

Klein argues that this Court should reverse his conviction if any errors cumulatively affected his right to a fair trial. It is Klein's burden to "show that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair." *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004) (citing *United States v. Parker*, 997 F.2d 219, 221 (6th Cir. 1993)).

Klein has not met this burden, and the trial court did not commit a reversible error in exercising its evidentiary discretion over the testimony Klein takes issue with on appeal. As such, there were no accumulated harmless errors that affected the fairness of Klein's trial.

## IV. Conclusion

For the reasons set forth above, the Court concludes that Magistrate Judge Altman did not abuse her discretion in admitting the testimony Klein challenges on appeal. As such, Klein's conviction for simple assault pursuant to 18 U.S.C. § 113(a)(5) is **AFFIRMED**.

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: July 29, 2026